Good morning. May it please the Court, Rey Antonio Estolano on behalf of Petitioner Marco Antonio Correa Rivera. We're here on a case of ineffective assistance of counsel. The brief history is on December 7, 2006. The Immigration Court ordered an application for cancellation of removal be submitted by April 6, 2006. You didn't file a reply brief, right? No. You didn't file a reply brief. I don't have one. I'm not blaming you. I'm just making sure. No, just an opening brief, Your Honor. Okay. So you must be pretty confident of your brief. I think the issues are straightforward, yes. Okay. Why don't we hear from the government? You've got to save your time for rebuttal. Good morning, Your Honors. May it please the Court, Nyree Brzezinski on behalf of Respondent Attorney General. How are you? I'm fighting a cold, you can tell, so excuse my voice. Okay. Well, you know, I was a little surprised. Because I didn't – opposing counsel cited various of our opinions, including Lowe. Yes. And I didn't see it in your brief. Maybe I missed it. Lowe? Hello? Yes. You know the case I'm talking about? Yes, I do. I'm a little surprised not to see a case cited in the blue brief cited in the red brief. So I thought I'd give you a chance to talk about Lowe. Okay. And about – Absolutely. I get these cases. In Lowe, the Court found that finding no collusion on the parts of the aliens and their attorney, where the attorney prepared an affidavit outlining his ineffectiveness, appeared with aliens before the IJ the next business day, and filed a motion to reopen, ultimately remaining the aliens' attorney, but the aliens didn't file a bar complaint against the attorney because he remained their attorney. That case is completely distinguishable here. You didn't do it in your brief. Did you think it was beside the point? No, I didn't. We discussed collusion and the possibility. We relied on Reyes for our argument on collusion. However, that case is completely distinguishable and doesn't need to be relied on in this case. There, the attorney remained their attorney. They were completely diligent in, you know, bringing forth their mistakes with the attorney. Here, that didn't happen. Here, my opposing counsel brought up the December 7, 2006 hearing. However, before that, his attorney were not present at the master calendar hearing on September 29. The immigration judge very reasonably looked for a new address for a petitioner. And then, when he found it through DHS counsel, he sent a new notice for a new hearing. So you don't have an IJ here that's unreasonable or that's trying to, you know, not be a stand-in to an alien. He provides, Mr. Rivera provides his lawyer all the information that's necessary to file an application for cancellation removal. And the lawyer has it and just doesn't submit it on time. There's no reason for it. The lawyer submits an affidavit saying he drops the cracks. It was a mistake by some lawyer in his office. So it seems pretty clear what happened here. And I am, this was not a situation where the client was at fault in any way. I disagree. I mean, this court has found in different cases that, you know, diligence on part of the alien to, you know, get in a late application, to contact the immigration court, to find a new attorney, can sometimes help and prove the IAC. Here, none of that happened. It was four months before the application deadline, and then seven months before the IJ even rendered his decision. That was almost a year. And there was no word from Mr. Rivera, nothing to the immigration court, no contact. He, you know, didn't even – there's nothing in the affidavit by his attorney that he even tried to contact him or that he was calling their office. However, this court's found, as you know, that, you know, in certain circumstances because things move so quickly in immigration law usually, the client would say, wow, six months have passed and nothing's happened. That's so unusual. I must be the only alien in the history of the United States that's wasted as much as six months without a decision from the – I don't think so. I mean, don't clients in these cases often wait for years with no action from our government? And that's just sort of the state of things? That would be true. How would the client know that the lawyer – The client knew here. How does the client know whether the lawyer has submitted or not? The immigration judge on the record indicated to him, he said, I provided warnings to the petitioner. He provided warnings to the petitioner about the failure to file the application on the record 4748 and that if he didn't file the application, he would understand it to mean the petitioner didn't want to apply for relief. I'm sorry. At that point, the deadline had passed? No. The deadline had not passed. That was before during the hearing. So he's telling him, be sure to get your deadline in on time. Right. Get it on time. It's not like he says to him, gee, you're about to miss a deadline or you've missed a deadline and the client does nothing. He just says, be sure to get it in. The client does what I think a lot of clients would do and say to his lawyer, gee, here, what do you need? And the lawyer says, give me all these things. I'll take care of it. And then he does. He – I'm sorry. He, the client, gives the lawyer all these things. What's he supposed to do at that point? He's supposed to sort of second-guess the lawyer? He's supposed to go down to INS or whatever the place is called now and check and see whether or not the stuff was filed? I'm just wondering. Well, after he got the order from the IJA, he could have filed a late application or he could have requested, like in other case law that this court has looked at, he could have requested. I'm sorry. So we're now at the point where he skews everything up to the point he gets the IJA's decision? I'm sorry. Can you repeat that? So you've just skipped over the entire time period until the IJA? No, I'm not skipping. You just did. I asked you, what do you do? And your answer was, when he gets the IJA's decision, he could have filed a late application. So you just sort of skipped that entire time. No. If that's where you are, that's fine. No, I'm not there. We can skip all of that time. No, I'm not there. That's what you said. You answered my question. So let me state my question again. Okay. And let me give you another chance to answer the question. Sure. So the IJA tells him, go ahead and submit your stuff. Be sure to be timely. Don't be late. And so he gives the stuff to his lawyer. Right. And then he does, you know, he waits for the lawyer to do stuff. What then is he supposed to do? What's the next thing you would expect a client to do? He didn't even show up to the hearing. That's what he could have done, at the very least, on the hearing date where he was supposed to submit the application. He didn't show up. There was no application. He could have checked in with his lawyer. He never called his lawyer. There's nothing in the affidavit saying, yes, Mr. Rivera called me several times, checking on his application or whether I had received everything. All he said was it was a miscalendering mistake. And after the application, he hasn't been fired. Okay. You said several things now. So he didn't bug his lawyer. That's one thing. I'm not saying he bugged. One phone call. One, you know. So he says he's supposed to call the lawyer and say, you remember the judge said you've got to be timely. Have you been timely with me? Have you done what lawyers are supposed to do? That's what he didn't do? I mean, I'm just trying to understand your argument. I mean, based on the case file from this court, that's where I. . . That's your position. Yeah. IAC has been found. Okay. And then he's supposed to. . . Where aliens haven't been diligent in trying to. . . What would he have done at the hearing? He could have said, my lawyer's not here, or I don't know where the application is, or, you know. . . I gave him the application. He could have explained it to the immigration judge, as other aliens have done in other cases in this circuit. And he could have said, I don't know what happened to him. So he's supposed to know at that point that the lawyer has not filed the application. How does he find that out? He finds it out when he gets the order from the I.J. eventually. I'm sorry. We're back to first base, to third base, right? So this is now when he gets the order from the I.J.? Right. Okay. So we're back to that point in time. Mm-hmm. Which order? The order denying him relief? Right. Well, saying that, there's nothing to base a decision on. Is there no application that was filed? And at that point, he can go into court? You said he can show up for the hearing. Wasn't that after the hearing? Yes, that was after the hearing. However, other aliens have gone to an immigration hearing and asked the immigration judge, even after the fact, this is what happened and explained it. For example, if you give me a minute, I can find it. Where? Ray v. Gonzalez, that happened. I don't really want to interrupt this love fest. I'll go for it. But the issue in this case is the basis on which the board decided this petition. I must say, I don't want to say Judge Kavinsky has a view. But to the extent that I can discern a view on his part, I think that's absolutely correct. However. I long for those words. Enjoy them, Chris. They're so seldom. You're not likely to hear it again today. But the basis of this decision is that the petitioner didn't comply with Lozada. Now, I find that decision equally incredible so that I don't want to give away my view on this case. But the basis of the decision is that he failed to provide probative evidence that he actually filed a complaint. Right. With the California State Bar. Yes. Now, he did, in his letter, say he had filed a complaint. He said he had. However, there was no receipt or any indication that it had been mailed to the California State Bar. Well, his indication is that he said he had. That's an indication. But this Court is. No, he didn't file a receipt. It's correct. But. Now, Lozada says that when he files, he must reflect whether a complaint has been filed. Right. It doesn't say you must file proof of receipt. No, it doesn't. However, this Court found in Reyes that some evidence that a letter was mailed at best indicated that the notice was sent, but not that the alien intended to send the notice, not that it was actually sent for purposes of satisfying Lozada. This is the same situation here. The facts are somewhat different in that case. He had the CC on the letter to someone. Here he says that he actually did it. And what Lozada requires is that he file something that reflects that it was filed. But there's nothing that says that he reflected. He provided documentation for all the other letters that he sent, FedEx copy slips, you know, envelopes, but nothing for this letter. Why was that difficult to just provide the letter, the slip that he had actually mailed it? There's nothing to indicate that it was ever mailed in the record. So how do you prove that something's been mailed if you put it in the mailbox? Sorry? How do you prove that something's been mailed if you just put it in the mailbox? It's not just putting it in the mailbox. It's that, you know, the FedEx slip, for example, that he mailed the other documents. No, no. I said put it in the mailbox. I'm not saying he didn't. Actually, the California State Bar stamped receipts. Right. But they don't often send it back to the petitioner. I mean, they don't always do that. Copying it to attached here would have been fine, saying receipts. When you go to the California State Bar. Lozada does not require that, does it? Lozada doesn't say what you must furnish is a receipt. It could have said in Lozada, you must mail and file a certified receipt must be supplied. It doesn't say that. It says to the downside. But then Lozada's requirement for. It should reflect whether a complaint has been filed. But then. Now, they could have said what you say, that you must file a receipt, or you must file a return copy, or you must file something. It doesn't say any of those things. But then Lozada's requirement for a State Bar complaint should be done away with. As anybody can just claim that they mailed a letter. Well, it should be. Provide a mail. Provide a letter. No, it should be, in my view. Provide a letter and say, yes, I mailed this letter. No, but that's what Lozada says about responses from counsel. Any subsequent response from counsel or report of counsel failure, I said, should be submitted with a motion. There it tells you what has to be submitted with a motion. Right. This doesn't say a receipt shall be submitted. That's something that someone is making up that is not in Lozada. But the Bar was saying there was no evidence indicating the letter was sent. And that's. It doesn't say you must submit evidence. It says the motion should reflect whether a complaint has been filed. Now, if you say so, that's the evidence. We don't disregard evidence from the Petitioner. One of the problems we have in some of these cases is that the Petitioner says that. He's either credible or not. Well, this Petitioner is not credible. Nobody said he's not credible. He has made his statement that he has mailed it. And that is a statement which reflects that. He's not required to do any more than that under the literal reading of Lozada. And when you want something to accompany it, he said that sentence before. But the purpose of the letter and having it sent is so that also the former attorney is on notice that a State Bar complaint has been filed. Well, we know he's on notice because he got a letter and responded to it. But his former attorney doesn't indicate that. He knows that the State Bar complaint was filed. And secondly, Mr. Correa Rivera had no problem providing documentation of other letters he had mailed. So when was he on notice, though, from the Board that he needed to file this receipt? I don't think it's so much a receipt. It's that the Board has nothing to do with it. No, no. I mean, when was he on notice that he had to file additional documentation that he actually had said from the California Bar that he had submitted? How did he know that he had to submit this additional documentation? Your argument is he did it here, he did it here, he didn't here. Right. I'm asking you, when did the Board tell him that he had to do that? The requirements under Lozada. Well, Lozada doesn't say that, as we know. All it says is we've been reading the language. Right. I mean, if I'm an attorney, if I'm an attorney, I go to Lozada and I say, okay, check, I've got to do this, due, and the record should reflect, the motion should reflect that the complaint has been filed. And so his motion says, I filed it, here's the attorney's response, I've gone right down to Lozada, and then the Board says, well, no, you didn't provide this additional information. So he doesn't, at that point, have an opportunity to even submit it because the Board has deemed it deficient for reasons that aren't contained in Lozada. I'm just saying if you're an attorney representing a client, you say you've got to comply with Lozada, you go down to Lozada and you say I've complied with it, how do you cure it? Well, but the purpose is of Lozada, and that one factor is to prevent collusion. And here, if we just have letters being ---- But the attorney's responded here. So the attorney says, I've got this Board, I've got this complaint, and here's my response. So the Board has everything it needs to determine collusion, doesn't it? But the Lozada requirements do.  And it says, it should reflect whether a complaint has been filed. And he says ---- The letter that just is photocopied and put into a record is complaining, yes, claiming, yes, I sent this. It doesn't indicate that the Board was ---- Wasn't there also a letter from him to the lawyer? Excuse me? Wasn't there also a letter from Correa to Morell saying that he had filed it? Yes, there was a letter. Okay. So it's not just a copy of the letter. There's also a letter that he wrote. But there's nothing additional to the ---- giving us evidence that the bar was on notice. Well, he says, he tells ---- You're right. Everything in that record indicates that the lawyer was on notice because there's FedEx slip receipts, there's a response from him. You know, you say I'm right without letting me finish what I'm saying. And then you say I'm right about something I wasn't talking about. Isn't this evidence, isn't the letter that he sends the lawyer evidence that he, in fact, sent to the bar? No. It's not evidence? No. It's simply a letter that he claims he sent to the bar. Well, where's the contrary evidence? Why isn't that evidence? Why isn't a document reflecting events in the real world evidence? This Court has decided that. Did you take a different evidence course in law school than I did, I thought? You only went to UCLA. No, you asked that the Lozada requirements be done away with. Yeah, this Court has decided that the Lozada requirements are needed to prevent situations like collusion between attorneys. You're not talking about something else. You're talking about evidence. I ask you a question. Isn't this evidence that he, in fact, sent the letter to the bar? There's a letter that he submits and the letter he says I sent to the bar. This is not evidence? Why isn't this evidence? It's evidence simply of the fact that he maybe attempted to send the letter, like in Reyes, a CC to the bar. That's an attempt. We have no concrete evidence that this was actually sent, that they received it, that they were on notice. You mean concrete as in cement? Excuse me? Concrete as in cement? What do you mean by concrete? What's not concrete about all this? Something, for example, like he had to the attorney or to, you know, the board, you know, those kinds of concrete. Excuse me? The other sort of evidence that he submitted to the board, to his former attorney, that kind of evidence would have existed. Why is that better? I don't understand. What's better about that than about what if he had filed an affidavit under oath saying I actually went to the mailbox and put this in the mail, probably addressed to the state bar? Would that be evidence in your book? That's not the facts of this case. I couldn't hear you. That's not the facts of this case. No, really? You think I thought it was a fact? See, when I say what if, if I say, listen to me, listen to me, if I said what if, I'm asking you what if he had done this? What if he had, what if it had been? Then perhaps the board would have decided this case differently. Is that evidence? Is that evidence? Perhaps the board would have decided the case differently. I'm asking you a question. Is that evidence? That's not for me to make the decision. It's that the board would have made that decision. Okay. I guess one final question. I guess I've never quite understood Lazada. Maybe you can help me. Okay. Because as I understand, you know, we have habeas cases where ineffective assistance of counsel is asserted every day, thousands and thousands and thousands of habeas cases. And we don't make habeas petitioners go to the state bar and turn them in. One of the reasons we don't is because ethical violations are different from legal malpractice. In fact, in some states, if you file an ethical complaint based on pure legal malpractice, they say it's a frivolous complaint. So why is the board making these people who have obvious, if they blow a statute that's obvious on its face, why does the board say that we need to make these people file what the bar considers frivolous compliance because they don't allege ethical violations, they allege legal malpractice, as a condition for making ineffective assistance of counsel claims? I believe that it's because that and this court has seen lots of collusion between immigration attorneys. I haven't seen a case of collusion, actually. I mean, I don't think I've seen a clear-cut case of collusion in all the ineffective assistance of counsel cases I've seen. And the other reason is because these letters are then filed by former attorneys trying to increase time or delays in the process because they fail to, you know, file things and just it causes unnecessary delays when they could have filed the applications on time and, you know, there needs to be some sort of answer to the state bar for mistakes in their program. Not for legal malpractice. I mean, if you blow a statute of limitations, for example, that's not necessarily an ethical violation unless there's a pattern in practice. It's a legal malpractice claim. But the standards, disciplinary standards, are far different from malpractice standards is what I'm saying, and it seems the board has conflated the two and increased a lot of filings to the state bar. Your Honor, you're correct. And even if you took that viewpoint, which this court has before, and they haven't abided by Lozada strictly because the attorney's conduct has been plain on its face as ineffective, then you can do that. But here, you know, the attorney simply saying I miscalendered it and the alien doing nothing else. He's still not filing a motion to reopen with an application, not diligently pursuing it, not going to his attorney. Is that effective assistance of petitioner, not an effective assistance of counsel? No. But based on this court where, you know, aliens have tried to hire another attorney after and cure the process or go to the immigration court and explain what's happened, and that didn't happen in this case. We have a year passed by. Okay. Okay. Thank you. Thank you, Your Honor. Okay. The case is now yours to answer.
judges: Kozinski, Reinhardt, Thomas